**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DENON KITT,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | CIVIL ACTION NO. 3:15-CV-01115<br><br>(MARIANI, J.)<br>(MEHALCHICK, M.J.) |

## REPORT AND RECOMMENDATION

Plaintiff Denon Kitt, proceeding *pro se*, is a federal inmate currently incarcerated at USP Victorville in Adalanto, California. On June 8, 2015, Kitt initiated this action by filing a complaint against the United States of America under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346. (Doc. 1). Kitt's complaint stems from events that occurred in October of 2013, when Kitt was exposed to another inmate at USP Canaan (the "carrier inmate") with active tuberculosis. (Doc. 1, at 2-3). Kitt subsequently tested positive for latent tuberculosis, and brought this FTCA claim alleging that the Federal Bureau of Prisons ("BOP") failed to take reasonable precautions that would have prevented Kitt from being exposed to tuberculosis. (Doc. 1, at 5). On January 19, 2017, following Defendant's first motion for summary judgment, the Court entered an Order adopting the report and recommendation of the undersigned magistrate judge, (Doc. 41; Doc. 37), in which it dismissed Kitt's claims of medical malpractice, and allowed the parties to proceed with discovery on Kitt's claims of ordinary negligence.

Following a period of discovery, Defendant filed a second motion for motion for summary judgment on June 8, 2017 (Doc. 58). On July 6, 2017, Defendant filed a brief in

support of its motion for summary judgment (Doc.63), along with a statement of facts (Doc. 62), and supporting exhibits (Doc. 62-1). Kitt filed a brief in opposition to the motion for summary judgment (Doc. 64). Defendant filed a reply brief (Doc. 58) on August 21, 2017. On June 23, 2017, prior to filing his brief in opposition, Kitt filed a motion for transcript and discovery (Doc. 61), brought pursuant to Rule 56(d) of the Federal Rules of Civil Procedure. On December 15, 2017, the Court granted that motion, and deferred ruling on Defendant's motion for summary judgment, giving the parties additional time to resolve any outstanding discovery requests. (Doc. 70). On December 26, 2017, Kitt filed a "motion for judgment on the pleadings" (Doc. 71) in response to the Court's order, advising the Court that he wishes the Court to rule on the motion for summary judgment with the documentation and pleadings it has in its possession. The Court recommends granting Kitt's motion for judgment on the pleadings, and turns now to the motion for summary judgment, which, having been fully briefed, is now ripe for disposition.

## I. FACTUAL BACKGROUND

The following factual background is largely taken from Defendant's Statement of Undisputed Material Facts (Doc. 62). Kitt did not file a statement of material fact in opposition to the motion for summary judgment, but does assert facts in his brief in opposition. (Doc. 64). Where the parties dispute certain facts, those disputes are noted. Local Rule 56.1 requires that a party opposing a motion for summary judgment shall include a "separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it is contended that there exists a genuine issue to be tried." Local Rule 56.1. Further, the rule provides that all material facts set forth in the movant's statement will "be

deemed to be admitted unless controverted by the statement required to be served by the opposing party." *Id.* To comply with Local Rule 56.1, Kitt should (1) clearly and unequivocally admit or deny whether each fact contained in Defendants' statement of facts is undisputed and/or material, (2) set forth the basis for any denial if any fact is not admitted in its entirety, and (3) **provide a citation to the record that supports any such denial**. *Occhipinti v. Bauer*, No. 3:13-CV-1875, 2016 WL 5844327, at *3 (M.D. Pa. Sept. 30, 2016) (emphasis added); *Park v. Veasie*, 2011 WL 1831708, *4 (M.D. Pa. 2011). "Unsupported assertions, conclusory allegations, or mere suspicions" are insufficient to overcome a motion for summary judgment. *Schaar v. Lehigh Valley Health Servs., Inc.*, 732 F.Supp.2d 490, 493 (E.D.Pa. 2010).

The Bureau of Prisons' ("BOP") policy for infectious disease management, including tuberculosis, is set forth in Program Statement 6190.04, Infectious Disease Management. (Doc. 62, ¶ 1; Doc. 62-1, at 4, ¶ 5; Doc. 62-1, at 33-37; Doc. 64, at 4). Before an inmate is transferred between BOP institutions, the infectious disease policy requires a documented medical clearance for tuberculosis, indicating there is "no evidence of medical complaints/symptoms associated with tuberculosis within the past 30 days and has … a baseline negative chest x-ray result if the tuberculin skin test is positive[.]" (Doc. 62, ¶ 2; Doc. 62-1; Doc. 62-1, at 36). Kimberly Bucklaw, R.N., was appointed to the position of Quality Improvement Infection Prevention and Control Coordinator at USP Canaan in 2005, and is responsible for the management of the various infectious disease control programs throughout USP Canaan, ensuring that appropriate screening, prevention, reporting as well as medical treatment occurs following the onset of any infectious diseases at the institution. (Doc. 62-1, at 49, ¶¶ 1-2). RN Bucklaw assists staff in the review and

interpretation of testing, direct activities to identify and control infectious disease at USP Canaan, as well as coordination with federal and community health care agencies to verify that the appropriate medical care is provided to any individual in need of treatment. (Doc. 62-1, at 49, ¶¶ 1-2).

A review of the medical records of the carrier inmate identified in Kitt's complaint reveals that inmate transferred into USP Canaan from Estill Federal Correctional Institute located in Estill, South Carolina in May, 2011. (Doc. 62-1, at 49, ¶ 5). On arrival at USP Canaan in 2011, the medical documentation indicated that this inmate, while previously treated for latent tuberculosis, was asymptomatic of active tuberculosis and appropriately transferred to USP Canaan. (Doc. 62-1, at 49, ¶ 6; Doc. 62-1, at 52). That inmate's Intra-System Transfer Form indicates he had a chest x-ray performed on April 20, 2011, which was negative for the active strain of tuberculosis. (Doc. 62-1, at 52). If that inmate's documentation had indicated any positive findings for the presence of an infectious disease, RN Bucklaw would have taken steps to prevent his designation to USP Canaan, pursuant to her authority as the Quality Improvement Infection Prevention and Control Coordinator at the institution. (Doc. 62-1, at 50, ¶ 7). Following this inmate's arrival at USP Canaan, he remained asymptomatic for any infectious disease until treatment for an unrelated medical condition revealed findings consistent with tuberculosis. (Doc. 62-1, at 50, ¶ 8). An August 15, 2012 radiological evaluation of the inmate's chest identified a mass located in this inmate's left upper chest, but the physician's note specifically stated that he did not see any evidence of tuberculosis in the chest at that time. (Doc. 62-1, at 60). The inmate began receiving treatment for two umbilical hernias as well as an injury to his right elbow on January 7, 2013, for which surgical repair was recommended. (Doc. 62-1, at 53-54). A pre-

operative chest x-ray on January 18, 2013, revealed an unspecified mass in his left lung, but the inmate was asymptomatic for tuberculosis at this time. (Doc. 62-1, at 56). On June 26, 2013, the inmate had a follow-up examination following a chest x-ray in which a hilar mass of the left lung was observed, and a CT scan was ordered to rule out cancer. (Doc. 62-1, at 57-59). The inmate was transferred to Wayne Memorial Hospital on August 12, 2013. (Doc. 62-1, at 57). An administrative note was entered into the inmate's medical record on August 13, 2013 stating:

> IM remains in precautionary isolation. Seen this AM by pulmonology with bronchoscopy planned. Differential remain granulomatous vs. cryptoccocal vs. neoplastic process in LUL lung. Will be maintained in isolation until sputums are confirmed.

(Doc. 62-1, at 60).

USP Canaan later received positive confirmation that testing indicated positive findings for active tuberculosis on August 19, 2013, in a Report of Consultation by Dr. Rosita Liu at Wayne Memorial Hospital, which states:

> [Inmate] is a 44 year old male who was referred from Waymart Prison for work up of lung mass. Patient has known lung mass since 2010. He was previously hospitalized in South Carolina, had work up and probably bronchoscopy with negative results. He had a left pulmonary nodule that had been persistent. Recently he complained of persistent cough for several months productive of yellowish green sputum. Recent chest CAT scan noted increase in size of the nodule and he was referred to oncologist. Oncologist recommended the patient be admitted to the hospital for further evaluation. He was seen by Dr. McVeigh who noted CAT scan showed stable left upper lobe nodule but there are new cavitary masses in the left upper lobe and the superior segment of the left upper lobe, also multiple bronchopulmonary nodules raising the possibility of AFB infection. Sputum AFB was ordered and apparently today sputum AFB was reported to be positive, ID pending. Patient complained of fatigue but denies fever. He denies blood streaked sputum. He may have some weight loss. He was exposed to tuberculosis in 1994 and had six months of therapy; not sure whether it was latent or active TB treatment. He does not know the source of his exposure.

(Doc. 62-1, at 64).

As a result of the August 19, 2013, confirmation of active tuberculosis from Wayne Memorial Hospital, RN Bucklaw took appropriate actions concerning notification of individuals at USP Canaan, as well as with the Bureau of Prisons' Regional Office, and a plan was put into place to identify and treat any potential cases of tuberculosis within the facility. (Doc. 62-1, at 50, ¶ 14). The carrier inmate returned from Wayne Memorial Hospital to USP Canaan on November 14, 2013, at which time he was placed in isolation, being separated from all inmates until his discharge from custody on December 6, 2013. (Doc. 62-1, at 62-63). RN Bucklaw is unaware of any specific cases of active tuberculosis identified at USP Canaan following this inmate's designation to USP Canaan, and is confident that the policy and procedures prevented any additional cases since this inmate was isolated from both staff and inmates in a timely manner and remained in isolation until his discharge from federal custody on December 6, 2013. (Doc. 62-1, at 50, ¶ 16).

Kitt, who had no prior history of tuberculosis exposure, received PPD skin tests to determine if he had tuberculosis exposure. (Doc. 62-1, at 3-4, ¶¶ 4-8; Doc. 62-1, at 26; Doc. 64, at 16). Kitt's skin tests on August 19 and October 8, 2013, were negative, but a repeat test on October 23, 2013, was positive. (Doc. 62-1, at 3-4, ¶¶ 4-8; Doc. 62-1, at 26; Doc. 64, at 16). Kitt remained asymptomatic for tuberculosis and demonstrated on examination no findings consistent with the onset of the active strain of tuberculosis. (Doc. 62-1, at 4, ¶ 8; Doc. 62-1, at 5-25). As a preventative measure, Kitt underwent radiological examinations according to BOP policy, revealing negative results and elected to undergo a course of preventative care, and has since remained asymptomatic for active tuberculosis. (Doc. 62-1, at 4, ¶¶ 10-14; Doc. 62-1, at 5-25).

On June 8, 2015, Kitt initiated this action by filing a complaint against the United

States of America, alleging that the BOP was negligent in placing the carrier inmate into USP-Canaan's general population while he was infected with an active strain of tuberculosis, and infers that the BOP either disregarded its own policy by failing to test the carrier inmate before placing him into general population or by admitting him into general population despite knowing that he carried an active strain of infectious tuberculosis. (Doc. 1, at 5-7). In opposing Defendant's motion for summary judgment, Kitt asserts that the BOP doctors should have suspected that the carrier inmate had active tuberculosis when they suspected he had lung cancer. (Doc. 64, at 10). Throughout his brief in opposition, Kitt also appears to raise the theory of *res ipsa loquitur*, repeatedly arguing that his exposure to tuberculosis is not something that would have occurred in the absence of negligence. (Doc. 64).

## II. MOTION FOR SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## III. DISCUSSION

Kitt claims that Defendant was negligent in failing to take reasonable precautions that would have prevented him from being exposed to tuberculosis. (Doc. 1, at 5). In his deposition, Kitt submits that his negligence claim is based upon his belief that the BOP failed to properly screen the carrier inmate, and that failure to properly screen resulted in Kitt contracting tuberculosis in October 2013. (Doc. 62-1, at 74-77). Kitt also submits that someone must have been negligent in order for him to have been exposed, given that he had previously tested negative for tuberculosis. Doc. 62-1, at 77-79, 85; Doc. 64). Defendant argues that it is entitled to summary judgment because Kitt cannot establish the elements of a negligence claim, and specifically, that he cannot demonstrate that there was a breach of a duty owed to Kitt by Defendant, and further, that he cannot establish that any alleged breach caused his injuries.

In assessing a claim under the Federal Tort Claims Act, federal courts apply the law of the state in which the act or omission occurred. *Hodge v. U.S. Dep't of Justice*, 372 F. App'x

264, 267 (3d Cir. 2010) (not precedential) (citing *Gould Elecs. Inc. v. United States,* 220 F.3d 169, 179 (3d Cir. 2000)). As all the acts or omissions of Defendant occurred in Pennsylvania, Pennsylvania law applies. Pennsylvania law requires four elements to be satisfied in order to establish liability in tort for negligence: "(1) a duty of care; (2) the breach of the duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the plaintiff." *Farabaugh v. Pa. Tpk. Comm'n*, 911 A.2d 1264, 1272-73 (Pa. 2006). As stated above, Defendant submit that Kitt's claim fails on the second and third elements – that he cannot demonstrate that there was a breach of a duty owed to Kitt by Defendant, and further, that he cannot establish that any alleged breach caused his injuries.

A. THE RECORD DOES NOT REFLECT ANY BREACH OF DUTY BY DEFENDANT.

Pursuant to 18 U.S.C. § 4042, Defendant owed a statutory duty of care to Kitt. Section 4042 provides, in pertinent part, that:

> The Bureau of Prisons ... shall –
>
> ...
>
> (2) provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States ...;
>
> (3) provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States.
>
> 18 U.S.C. § 4042(a)(2),(3).

"The duty of care as provided by 18 U.S.C. § 4042 is that of ordinary diligence to keep prisoners safe from harm." *Grundowski v. United States*, No. CIV.A. 3:07-2207, 2012 WL 1721781, at *5 (M.D. Pa. May 16, 2012); *quoting Hossic v. United States*, 682 F.Supp. 23, 25 (M.D.Pa.1987). Because "it is unreasonable to expect that authorities can make a

penitentiary a risk-free institution....'[T]he duty imposed upon a jailer vis a vis his prisoner is to exercise reasonable care and diligence to protect the prisoner from danger, known to or which might reasonably be apprehended by him.' " *Turner v. Miller*, 679 F.Supp. 441, 443 (M.D.Pa.1987) (*citing Walker v. United States*, 437 F.Supp. 1081, 1082 (D.Or.1977); *Hossic*, 682 F.Supp. at 25).

In limited circumstances, the courts of the Third Circuit have recognized that certain acts or omissions by prison medical staff can constitute a breach of an ordinary negligence duty, such as the denial of an inmate's prescribed medication, or the denial of access to medical treatment by medical staff, or the failure to provide proper clothing and shoes. *Grundowski v. United States*, No. CIV.A. 3:07-2207, 2012 WL 1721781, at *6 (M.D. Pa. May 16, 2012); *Jones v. United States*, 91 F.3d 623, 625 (3d Cir.1996); *Hill v. Lamanna*, No. 03–323, 2006 WL 2433773, at *9 (W.D.Pa. Aug.18, 2006).

In this case, however, the undisputed record establishes that the carrier inmate's medical transfer documentation shows that he had no symptoms of active tuberculosis within thirty days of his transfer to USP Canaan in May 2011, and an April 2011 x-ray of the carrier inmate was negative for tuberculosis. (Doc. 62-1, at 49, ¶ 6; Doc. 62-1, at 52). Per the infections disease policy of the Bureau of Prisons, the carrier inmate was admitted into the general population when he was transferred to USP Canaan. (Doc. 62, ¶¶ 1-2). Notably, the undisputed record indicates that the carrier inmate was diagnosed with tuberculosis only after he left USP Canaan, and that no staff member could have known that he had developed active tuberculosis while confined in the same housing unit as Kitt. (Doc. 62). The undisputed record establishes that the procedure and standard of care outlined by the BOP for identification and treatment of tuberculosis were followed. As such, the record is

devoid of any evidence which would allow a jury to find that Defendant breached its statutory duty of care to Kitt.

B. <u>The Record Does Not Reflect Any Evidence of Causation.</u>

Further, Kitt is unable to point to any evidence in the record that Defendant was a factual cause of his injuries. *Grundowski*, 2012 WL 1721781, at *6; *Harris v. Kellogg, Brown, & Root Serv., Inc.*, 796 F.Supp.2d 642, 658 (W.D.Pa.2011). "Conduct is a factual cause of harm when the harm would not have occurred absent the conduct. To be a factual cause, the conduct must have been an actual, real factor in causing the harm, even if the result is unusual or unexpected. A factual cause cannot be an imaginary or fanciful factor having no connection or only an insignificant connection with the harm." Pa. SSJI (Civ), § 3.15. However, "[t]o be a factual cause, the defendant's conduct need not be the only factual cause. The fact that some other causes concur with the negligence of the defendant in producing an injury does not relieve the defendant from liability as long as [his or her] own negligence is a factual cause of the injury." *Id.*

Here, the undisputed record before the Court lacks any evidence that might allow a reasonable jury to find that the alleged breach caused Kitt to contract tuberculosis. Kitt's sole argument is that he must have contracted tuberculosis due to the negligence of Defendant because he did so after he received notice that he had been exposed by the carrier inmate. As Defendant correctly argues, the mere fact that Kitt was diagnosed with tuberculosis following the carrier inmate being in general population at USP Canaan is simply not enough. As this Court has noted, the simple fact that single event A (here, the screening and admission of the carrier inmate into general population) occurred before event B (the diagnosis of Kitt with tuberculosis) in and of itself does not mean that event A caused

event B. Such reasoning exemplifies the *post hoc ergo propter hoc* logical fallacy. *Mun. Revenue Serv., Inc. v. Xspand, Inc.*, 700 F. Supp. 2d 692, 711 (M.D. Pa. 2010).

C. Kitt's Reliance on *Res Ipsa Loquitur* Fails.

In his brief in opposition to the motion for summary judgment (Doc. 64), Kitt raises the doctrine of *res ipsa loquitur*. In Pennsylvania, "*res ipsa loquitur*" is "a shorthand expression for circumstantial proof of negligence." *Ahora-Blanco v. United States*, No. 4:11-CV-01575, 2013 WL 6328467, at *3–4 (M.D. Pa. Dec. 5, 2013); *citing Gilbert v. Korvette*, 457 Pa. 602, 327 A.2d 94, 99 (1974). A plaintiff relying on *res ipsa loquitur* is entitled to present his proof to the jury only after the court determines that an inference of the defendant's negligence may reasonably be drawn from the plaintiff's circumstantial evidence. *See* Restatement (Second) of Torts § 328D (1965); *Gilbert*, 327 A.2d at 100. An inference of the defendant's negligence is reasonable when:

> (a) the event is of a kind which ordinarily does not occur in the absence of negligence;
>
> (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and
>
> (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.
>
> Restatement (Second) of Torts § 328D (1965).

Where plaintiff's evidence does not satisfy each of these conditions, a jury verdict for the plaintiff would be "based on speculation and not supported by adequate evidence or reasonable inferences" and a jury cannot be permitted to return a verdict on such a basis. *Ahora-Blanco*, 2013 WL 6328467, at *4; *citing Winkler v. Seven Springs Farm, Inc.*, 240 Pa.Super. 641, 359 A.2d 440, 442 (1976).

In this case, Kitt can only satisfy the third prong of that inference – that the claimed negligence is within the scope of Defendant's duty to Kitt. Kitt has not established in the record of evidence before the Court, nor in his argument, that any other responsible causes have been eliminated. Nor does the record reflect that this is the kind of event which does not occur in the absence of negligence. Defendant avers that it is a "rubric of life" that an airborne microbe may be transmitted in the absence of negligence. (Doc. 69, at 10-11). It is possible for Kitt to have contracted tuberculosis even in the absence of any negligence by Defendant, and despite Defendant's actions complying with the appropriate standard of care. *See O'Neal v. Dep't of Army*, 852 F. Supp. 327, 336 (M.D. Pa. 1994) (finding that *res ipsa loquitur* was not appropriate where it was possible for well contamination of the kind alleged to have occurred even in the absence of negligence alleged by plaintiffs). The nature of tuberculosis as an airborne disease, spreadable through the air by coughing or sneezing (a fact admitted to by Kitt through the attachments filed with his brief in opposition to the motion for summary judgment (Doc. 64)), precludes a finding of *res ipsa loquitur*. The very nature of the disease prevents a finding by this Court that there could be no other responsible causes of Kitt's infection other than negligence by Defendant.

## IV. CONCLUSION AND RECOMMENDATION

Based upon its review of the undisputed record before this Court, and having considered the arguments made by all parties, the Court can discern no genuine issue of material fact sufficient to preclude an award of summary judgment. The record contains no evidence upon which a reasonable jury might find that Defendant was negligent in its screening and admission of the carrier inmate into general population, and specifically, that Defendant breached its duty of care to Kitt, or that Defendant's actions were the factual

cause of injury to Kitt. Accordingly, it is recommended that:

1. Defendant's motion for summary judgment (Doc. 58) be **GRANTED**;
2. Plaintiff's motion for judgment on the pleadings (Doc. 71) be **GRANTED**; and
3. The Clerk of Court be directed to **CLOSE** this case.

**BY THE COURT:**

**Dated: February 27, 2018**

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DENON KITT,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | CIVIL ACTION NO. 3:15-CV-01115<br><br>(MARIANI, J.)<br>(MEHALCHICK, M.J.) |

**NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **February 27, 2018**. Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**Dated: February 27, 2018**

s/ Karoline Mehalchick
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**